No. 31,785

THE STATE OF KANSAS, *Appellee*, v. RONALD FINNEY, *Appellant.*

(32 P. 2d 517.)

Opinion filed May 5, 1934.

· · *J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellant.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, and *Hugo T. Wedell,* of Chanute, for the appellee.

The opinion of the court was delivered by

SMITH, J.: Defendant was prosecuted and pleaded guilty to forgery. He later asked the court to permit him to withdraw his plea of guilty. This was denied, and defendant appeals.

At the start of the trial the defendant was informed against in sixty counts. Thirty of these were counts for forgery of municipal bonds and thirty of them were for uttering forged municipal bonds. The odd-numbered counts are the forgery counts. The even-numbered ones are the uttering counts. The charge had to do with the defendant forging an issue of thirty bonds of the city of Hutchinson in the amount of $1,000 each. The only difference in the bonds was that they were issued in series of three; that is, three bonds fell due on the same date. Because of this, counts 1, 3 and 5 were exactly alike, since each count charged the forgery of a bond for the same amount as the others and due on the same date. The same is true of counts 7, 9 and 11 and so on throughout the entire information.

This situation caused counsel for defendant to level various motions to quash and motions to compel the state to elect as to which counts it intended to rely upon for conviction. On the record, without an examination of the facts and circumstances, it does appear that there are only ten good forgery counts charged. At the outset it would be well to state that since the evidence showed that the uttering of the bonds had been done all as one transaction, at the same time and to the same person, all the uttering counts were dismissed except one. That left the defendant charged on the thirty-one counts instead of sixty.

The motion that was most vigorously urged during the oral argument and in the brief is that made at the close of the state's case to require the state to elect upon which one of each of the series of

three counts it relied on for conviction. At this stage of the case defendant was aware that the state had based each count on the forgery of a separate and distinct bond. In fact, this had been apparent ever since the preliminary examination. Defendant had seen the forged instruments and knew that they were issued so that there were ten sets of three each and that all the bonds in each group of three were exactly alike. It was necessary that each bond be described in the count charging defendant with forging it. The bonds might have been distinguished by giving each one of them a number and designating it by that number. It is difficult, however, to understand how this would have been of any benefit to defendant. It is also difficult to see how defendant was prejudiced in any way by the failure of the state to so designate the bonds in the counts. If it were a case where the state had used evidence with reference to the same bond to prove all three counts, then the defendant would have been entitled to complain and the trial court would have compelled an election at once. But such was not the case here. This argument of defendant may be disposed of on the authority of R. S. 62-1718, which provides as follows:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

(See, also, *State v. Clark*, 125 Kan. 791, 266 Pac. 37.) We hold that it was not error for the trial court to deny the motion of the defendant to compel the state to elect as to which counts it relied upon.

Defendant also raised by appropriate motion the question of whether there were one or thirty counts of forgery proven. Here it should be noted that there were thirty forged bonds introduced; each bond was an original, and each required the affixing of signatures and a seal to render it valid. There were the forgeries of signatures of the municipal officers of the city of Hutchinson on each bond. The placing of the seal of the city on each bond was a separate and distinct act. The rule is laid down in 26 C. J. 956. Section 112 is as follows:

"Although separate instruments were forged by a defendant on the same date and as a part of the same general transaction, the forgery of each constitutes a separate offense, punishable under a separate indictment or count; and, although several drafts may be uttered as one indivisible act, the forgery of each is a separate offense."

(See, also, *United States v. Carpenter*, 151 Fed. 214; also, *Barton v. The State*, 23 Wis. 587.) The rule is stated in 12 R. C. L. 162. Section 24 is as follows:

"As to several acts of forgery, each generally constitutes a separate crime, even though they are committed in the course of a continuous transaction, on the same date, or even on the same piece of paper, unless each act constitutes merely a component part of an indivisible instrument."

We have concluded that the argument of defendant that there was only one forgery proven is not sound. Since that conclusion has been reached, the result is that when the state rested its case there were thirty counts of forgery and one count of uttering a forged instrument upon which the state was entitled to go to the jury.

After the motion spoken of above had been denied and at the conclusion of the state's case counsel for the state and counsel for the defendant held a series of conferences. The object of these conferences was to reach an agreement whereby defendant might plead guilty to a lesser number of counts than were charged in the information.

These conferences were held in the judge's chambers. The judge seems to have been present at some of them and not present at others. There is a sharp difference in the statements of counsel as to just what transpired. Counsel for defense insist that the final agreement was that defendant should plead guilty to thirty-one counts and he would receive a sentence providing that sixteen of the thirty-one counts should run concurrently with the fifteen counts and that sentence on the fifteen counts should run consecutively. The county attorney and his assistant state that their understanding was that the county attorney would recommend that the sentence should be that fifteen of the counts would run consecutively and the sentences on the remaining sixteen counts should run concurrently with the sentences on the first fifteen counts. They state that this arrangement had the approval of the trial judge. The special prosecutor did not participate in all the conferences, but states that the only observation he made was that if any leniency was extended the minimum should be twenty years. The trial judge states that in one of the conferences he did tell the county attorney that if he would recommend a sentence of fifteen years minimum he would consider it. He also states that he at no time entered into any agreement with anybody to sentence the defendant to any particular term. These conferences took place on December 23, 1933.

Defendant pleaded guilty on that date. The passing of sentence was deferred until December 30, 1933. On that date the court called attention to the case of *Beck v. Fetters,* 137 Kan. 750, 22 P. 2d 477. The trial judge at that time expressed doubt as to whether according to that authority he had power to make the sentences run concurrently. Some argument ensued, and the passing of sentence was continued to January 2, 1934. On that date further argument was had. The trial judge expressed some doubt as to whether he had power to make the sentences run concurrently. When the trial judge indicated that this was the view he had of the matter defendant moved that he be permitted to withdraw his plea of guilty and enter a plea of not guilty. The county attorney consented that this should be done. In the ruling denying this motion the court made the statements that have heretofore been set out in this opinion. They have the force of findings of fact. The motion for permission to withdraw the plea was denied. That is the principal error that is urged in this appeal.

The ground upon which defendant urges that the court should have allowed the withdrawal of the plea of guilty is that defendant did not enter a voluntary plea of guilty to thirty-one counts except upon the understanding that sixteen of the counts should run concurrently with the other fifteen counts. The court in ruling on the motion found that no such agreement had been made. We have carefully examined the record and the statements of counsel and can see no reason for disturbing that finding.

The question of whether a plea of guilty should be permitted to be withdrawn has generally been held to be a matter within the discretion of the trial court. The rule is well stated in 20 A. L. R. 1450. There it is said:

"As the withdrawal of a plea of guilty is within the discretion of the court, and as this discretion is exercised on the facts of each particular case, it is difficult to lay down a general rule covering all the circumstances under which a plea of guilty may be withdrawn. However, it has been held that the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place, and that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty."

See *State v. Williams,* 45 La. Ann. 1356, 14 So. 32. The question has been considered by this court many times. In the *City of Salina v. Cooper,* 45 Kan. 12, 25 Pac. 233, this court held that there

was a wide discretion in the trial court on this matter of whether a plea of guilty should be permitted to be withdrawn. In that case it was held that the court abused its discretion in denying the motion of the defendant for permission to withdraw his plea of guilty. The ground upon which it was so held was that the defendant was arrested and taken to the police court before a large crowd; he was excited; the whole affair was done hurriedly; he did not know what he was doing; he was not aware that he had a hearing; he had no counsel and he was not guilty. All these things appeared by uncontradicted evidence. None of these facts are present here. There had been a trial lasting two weeks, the state's case had been made, numerous motions attacking the information had been presented, argued vigorously and ruled upon. The plea came as a result of several conferences at which defendant had been represented by one of the ablest and most astute of counsel.

As has been stated heretofore, the finding of the court was that no promise of any sort was made. What was stated by the court was that if a recommendation was made by the county attorney it would be considered. That position of the trial court is strictly in keeping with the law. The county attorney can do nothing more than recommend. No promise that he should make can go any farther or have any more weight than a recommendation which the court should consider along with all the other circumstances. The discretion of the county attorney is as to what and how many charges will be filed and finally presented. In the final analysis the duty of imposing the sentence is that of the trial court. It cannot be promised away even by the court itself. In the exercise of the discretion which the court has in considering the question of whether the motion of defendant to withdraw his plea of guilty should be sustained, we hold that the court no doubt considered all these circumstances.

In *State v. Yates,* 52 Kan. 566, 35 Pac. 209, the court held:

"The rule is, that where a defendant has pleaded guilty in a criminal cause, and sentence has been passed upon him, it is within the sound discretion of the trial court to permit the plea to be withdrawn, and to allow a plea of not guilty entered. If the court abuses its discretion, error may be assigned therefor."

There defendant was represented by counsel.

In *State v. Garrett,* 78 Kan. 882, 98 Pac. 219, this court said:

"The voluntary plea of guilty solemnly entered by the defendant while he

was duly attended by his counsel was the highest evidence of guilt, and the court did well to weigh with caution the defendant's affidavit, filed after the jury had been discharged for the term, stating that he had looked further into the evidence for and against him and had found that it ought to be submitted to a jury, and that he was innocent. Very clearly the district court did not abuse its discretion in refusing to allow the plea of guilty to be withdrawn." (p. 883.)

These two cases were cited with approval in *State v. Beasley*, 133 Kan. 438, 300 Pac. 1103.

The question is so well settled by the decisions of this court that we do not deem it necessary to cite the many authorities from other jurisdictions to the same effect.

It is worthy of note that the lengthy affidavit filed in this case by leading counsel does not anywhere make the claim that defendant is not guilty of the crime of forgery. The burden of the affidavit, which was filed with the court to be considered with the motion to withdraw the plea, is that under authorities relied on by counsel only one crime of forgery had been proven by the state. This, as we have seen, was a mistaken view of the law on the part of counsel. The court, in considering the motion, had a right to consider the evidence that had been introduced by the state; it also had a right to consider that counsel avoided a forthright claim that defendant was not guilty. We conclude that the court did not abuse its discretion in denying the motion to withdraw the plea of guilty of forgery. It taxes the credulity of this court too far to claim that a man would plead guilty to even fifteen counts of forgery if he were not guilty.

There is another question in this case which must be considered. That has to do with the construction placed by the trial court on R. S. 62-1512 and the case of *Beck v. Fetters*, 137 Kan. 750, 22 P. 2d 438.

R. S. 62-1512 reads as follows:

"When any person shall be convicted of two or more offenses before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior convictions."

*Beck v. Fetters*, supra, holds as follows:

"Under a statute where a person is convicted of several offenses, the court in sentencing the defendant on the second or subsequent conviction is expressly directed to impose the penalty of imprisonment to commence at the

termination of the former imprisonment. In such a case the court must render judgment in conformity with the statutory policy and is without authority to adjudge that it shall run concurrently." (p. 752.)

It will be remembered that the plea of guilty was entered on December 23, 1933, and defendant presented himself for sentence on December 30. On that date the trial court called attention to the Beck case and expressed some doubt as to his authority to sentence defendant and to provide that part of the terms should run concurrently. On account of this the passing of the sentence was continued until January 2, 1934. At that time a lengthy argument was had as to what agreement had been made and as to the effect of the holding in the Beck case. At that hearing the trial court stated:

"I have my mind pretty well made up about it, Mr. Schenck. I have spent the week-end trying to change my mind, but I haven't been able to."

Later, in the same statement, the court said:

"The fact is that when the court ran across the decision referred to, in 137 Kansas, and when he came to the conclusion that if the county attorney did make a recommendation of part of these counts running concurrently, he ought to call the attention of the county attorney to that decision, with that idea in mind I went to the county attorney's office and found Mr. Goodell absent, but found Mr. Harvey present."

Again—

"The court has at no time entered into any agreement with anybody to sentence this defendant to any particular term. The court was perfectly willing to consider recommendations of the county attorney in this matter, but the court is still of the opinion that under this 137 Kansas of which I think all counsel should have been advised, although we disagree on what it means, he cannot consider the recommendations of counsel for the state at this time as to the sentence."

It appears from these statements that the trial court interpreted the above statute and opinion to mean that the court did not have authority to sentence defendant in any way other than to provide that the terms on each count should run consecutively.

This requires a critical examination of R. S. 62-1512. It will be noted that it provides that it shall be in effect only where a person shall have been convicted of two or more offenses before sentence shall have been pronounced upon him for either offense. That language plainly means that the conviction shall be at two or more different trials. There is no way that a man could be convicted of more than one offense before sentence should be pronounced on the other where they were all charged in the same information.

Again the statute speaks of a second or subsequent conviction. A conviction of several counts is not a second or subsequent conviction. It is a simultaneous conviction as to those counts. In fact, it will be noted that the statute does not operate on the sentence but on the serving of the term of imprisonment. It is a guide to prison authorities, not a limitation on the authority of courts.

In the Beck case the defendant was sentenced to serve a period of six months in the county jail and that he pay a fine of $100 on each of the two counts, the jail sentence to run concurrently. Beck appealed from that judgment to this court. That appeal was dismissed for want of prosecution on November 28, 1931. On December 29, 1930, Beck was again arrested upon a second and separate charge. On January 15, 1931, he was found guilty and sentenced to serve ninety days and pay a fine of $100. It will be seen that the second conviction occurred while the appeal on the first conviction was pending. The only question presented in that case was whether or not the service of the term of imprisonment pronounced by a sentence in one case on December 30, 1930, would run concurrently with the service of the term of imprisonment pronounced by a sentence upon which he was found guilty on January 15, 1931, in another and different case. The court analyzed the statute as heretofore pointed out. The defendant was convicted of two offenses, but before sentence was pronounced upon him for one offense he was convicted of another offense in the only way that such a thing could possibly transpire, that is, by a separate charge and after a separate trial. The court held that the imprisonment for the second and subsequent offense—conditions which could only exist where there had been two separate charges and trials—should commence to run at the termination of the term of imprisonment which was adjudged on the prior conviction. The Beck case did not deal with a situation where the charges were all in one information and after one trial as in this case.

The authority of the trial court to provide that sentences on several counts shall run concurrently was recognized by this court in the case of State v. Woodbury, 133 Kan. 1, 298 Pac. 794, in an opinion denying a rehearing, the original opinion of affirmance being reported at 132 Kan. 22, 294 Pac. 928. The defendant had been convicted on several counts of violation of the banking laws. He appealed. The judgment was affirmed, but the case was remanded

to the district court for a correction of the sentence. In the opinion denying a rehearing this court said:

"The question is asked whether the resentence should apply to those counts only where the sentence given was wrong because it was made under the new law, while the crime charged was under the old law where the penalty was different from what it now is under the new law, or should the defendant be resentenced as to all the counts at one time? We answer this question by stating that there must be but one sentence. The resentence should cover all the counts, those where there was no mistake as well as those in which a mistake was found. The statute (R. S. 62-1512) and the well-established rule as to the sentence on any or all of the counts running concurrently or consecutively must apply to a single sentence delivered at one time only and covering all the counts on which conviction was had. Whatever concurrent or consecutive features or elements there may be prescribed by the court must all be a part of the one sentence imposed and pronounced by the court on one date only and at one time." (*State v. Woodbury*, 133 Kan, 1, 2.)

On a question of this sort the operative interpretation that has been given the statute is worthy of being given some weight. It has been the uniform practice of district courts in this state to exercise discretion, and when the circumstances were such that in the opinion of the court justice would best be served by providing that the term of imprisonment on some counts of which a defendant should be convicted should run concurrently with certain other counts to so provide in the sentence.

After a careful examination of the statute and the authorities we have reached the conclusion that the trial court was mistaken in the interpretation given R. S. 62-1512, and the case of *Beck v. Fetters*, when the court concluded that those authorities prevented a ruling that the term of imprisonment on certain of the counts should run concurrently with the term on certain of the other counts.

Since this conclusion has been reached, the question remains as to what disposition should be made of the case. We hold that the sentence that is imposed by a trial court should be such as the court in the exercise of discretion, taking into consideration all the circumstances, deems the ends of justice require. Under the indeterminate sentence act not much discretion is open to the trial court. We have seen, however, there is wide latitude afforded where the conviction is of several counts in the same trial. The majority of the court have concluded that the remarks of the judge indicate that the trial court did not fully realize the wide discretion that was vested in it and that the cause should be remanded to the trial court with directions for the court thereof to exercise its discretion

and to proceed to impose upon defendant whatever sentence the circumstances and the ends of justice require. This must not be construed to be a direction on the part of this court that the sentence should be any different from that already imposed. Upon that question we carefully refrain from passing an opinion. That is the province of the trial court and the trial court alone. We approve the finding of the court that no promise was made by the court. We hold that no promise made by the prosecuting officers could be any more than a promise to make a recommendation, and we hold that defendant was fully informed of his rights and that it was not an abuse of discretion for the trial court to deny the motion of the defendant to withdraw his plea of guilty.

The judgment of the trial court is affirmed, but the cause is remanded to the district court of Shawnee county with instructions to resentence the defendant providing that the term of imprisonment on each count shall run concurrently or consecutively as in the judgment of that tribunal the circumstances of the case and the ends of justice require.

SMITH, J. (dissenting): I concur in all that is said in the prevailing opinion except the portion of the order that remands the case to the district court for resentence. In my opinion the court in reaching that result attaches too much weight to the colloquy engaged .in by court and counsel during the argument. I do not deem it wise to thus set up a rule by which judges will hesitate to comment on arguments or situations that are being presented. The statements of the trial court were nothing more than the running comment that any judge might make when a close matter was being forcibly presented. There is not a sufficient showing to justify the assumption that the court was finally pursuaded in the judgment he rendered by the case and statute discussed. We cannot weigh the conclusions of trial courts with the same care that we weigh the testimony of an unwilling witness. I am constrained to hold that were it not for the conflicting statements of counsel—all of them honorable men—this feature of the case would have received but scant consideration. The finding of the trial court that there was no promise to which he was a party should be conclusive in this matter. The defendant will not be entitled to his release when he has served the minimum sentence. He will only be entitled to appear before the parole board. (See R. S. 62-1525.) If that board sees fit

it may permit him to be paroled, providing the governor approves the action of the board. (See R. S. 62-1529.) On the other hand, if the board does not see fit to recommend the parole the defendant may be held in imprisonment until the maximum is served, which in this case would be for life under either sentence. The net result is that the sentence pronounced by the court does not operate to limit in any degree the term which may be served. One step further, after the defendant has served some years, sentence may be commuted by the governor by reducing the minimum (see R. S. 62-2220). In case this is done the defendant will be entitled to appear before the parole board when he has served the new minimum set by the commutation. It will be seen that the same authority that can hold him in for life can cause his release in a shorter time. This is so, irrespective of the sentence pronounced by the trial court. This is all a part of the present penal system in this state. It has been criticized at times, but the theory of it is that the state penal institutions are intended as places where the people confined thus may be rehabilitated and made into useful citizens. The theory is that the parole board and governor only extend clemency to such persons as appear ready to become law-abiding members of their communities. At any rate, I am firmly of the opinion that the order of this court remanding the cause to the trial court is a useless gesture.

BURCH, J., dissents from that portion of the judgment remanding the defendant for resentence and corresponding part of opinion.

HARVEY, J. (concurring in part and dissenting in part): Under our statute (R. S. 62-1718), directing this court to give judgment without regard to errors which do not affect the substantial rights of the parties, the appeal in this case might well be dismissed, for any sentence of not less than one nor more than twenty-one years on each count, which the court could rightfully impose in this case, whether on eleven, fifteen, or on thirty-one counts, if made to run consecutively, would extend far beyond the normal lifetime of appellant and amounts to a life sentence to him. His only hope to be released from prison is through the exercise at some time in the future of some form of executive clemency,—pardon, commutation of sentence, or parole—and this can be exercised as well under one group of such sentences as under the other. But since the court deems it not a proper case in which to apply the above statute,

and since my views do not accord in all respects with those stated in the opinion, I think best to state them separately.

I concur in the order remanding the case for resentence. I concur also in the holding of the court that neither our statute (R. S. 62-1512) nor our decisions—including *Beck v. Fetters,* 137 Kan. 750, 22 P. 2d 479—require a trial court to impose consecutive sentences on each count where there is a plea or verdict of guilty to several counts in the same information. The statute is not as clearly worded as it might be, and if strictly construed perhaps applies only to a situation such as was before the court in *In re White, Petitioner,* 50 Kan. 299, 32 Pac. 36, where defendant was charged with larceny, in three separate actions, all tried at the same term of court, each resulting in a verdict of guilty, and he was sentenced in the three cases on the same day. But the statute clearly applies to the sentence to be imposed "upon the second or other subsequent conviction." In *Beck v. Fetters,* supra, the "second conviction" was on a second information and at a subsequent term of court, and the statute was held to apply, and properly so. The statute indicates the legislative policy of the state (*State v. Finch,* 75 Kan. 582, 89 Pac. 922), to provide punishment for second and other subsequent convictions, to be independent of and in addition to punishment imposed in a former case. That policy is further indicated by R. S. 62-1528 relating to punishment for crimes committed by a prisoner on parole. *In re Weisman,* 93 Kan. 161, 143 Pac. 487, was reversed because it was not in harmony with the policy of the statutes above mentioned and for the reasons stated therein for the conclusion reached. The opinion stated that "the statute (R. S. 62-1512) is not self-executing," and the reasoning reverted to the old common-law doctrine. This court was unanimous in holding that view to be erroneous. It had given rise to the contention of the petitioner in *Beck v. Fetters,* supra, and to other law violators similarly situated, which, if sustained, would thwart obvious purposes of the statute and disrupt the policy of the state in this regard; hence, it was necessary that the case be overruled. That decision did not deal with the question of cumulative or consecutive sentences on separate counts of the same information, and there was no real reason to so construe it; nor did it overrule *In re Wernsen,* 93 Kan. 625, 144 Pac. 1018; nor did it overrule *State v. Woodbury,* 133 Kan. 1, 298 Pac. 794, which was reversed for resentence because of errors therein resulting from not applying the proper statute to some counts of the

information and in which the trial court was directed to resentence the defendant and was authorized to make the sentences run concurrently or consecutively, as it might determine; nor did it criticize numerous opinions in this court which have affirmed trial courts when concurrent sentences have been imposed upon pleas or verdicts of guilty to two or more counts in the same information. The correct rule for imposing sentences, as I understand it, is: (1) Where there is a plea or verdict of guilty to two or more counts in one information, the trial court may impose concurrent or consecutive sentences on the different counts, or make some concurrent and others consecutive, as it deems fit and proper under all the facts and circumstances of the case; (2) where there are pleas or verdicts of guilty in separate cases and on separate informations, before sentence is pronounced for either offense, the sentences shall be cumulative; and (3) where there are second or other subsequent convictions, necessarily upon second or other informations, the sentences on the second or later ones shall be consecutive to the former ones. The statute providing that such sentence "shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior convictions" makes this reasonably clear. Any lack of such clarity is removed by the decisions of this court in *State v. Finch,* supra, and *Beck v. Fetters,* supra.

The legal questions treated in the first and second paragraphs of the syllabus and corresponding portion of the opinion are not necessary to be treated under the appeal taken in this case. Since they are treated, I state my understanding of the law pertaining thereto as follows: When sentence is to be pronounced upon a plea of guilty to an information the court looks to the information to see what offense is charged, not to evidence which may have been offered at a preliminary hearing and which is not before the court imposing the sentence, nor to evidence offered on a partial trial of the action. In such a case the court does not impose a sentence upon the verdict, because no verdict has been rendered. Looking at the information in this case, counts one, three and five in the information are identical in every respect. Shortly stated, they charge defendant forged a bond of the city of Hutchinson maturing February 1, 1933. That is repeated three times in the three counts without anything to distinguish that three bonds are referred to and without any allegation in either count to the effect that the offense charged

differs in any respect from the offense charged in the other statements. It is my judgment that a plea of guilty upon those three counts supports only one sentence for forgery. For the same reason counts seven, nine and eleven support but one sentence, and so does each successive group of three of the odd-numbered counts of the information. There are ten of these groups, and, collectively, they support ten and only ten sentences for forgery. The sixtieth count charges the uttering of forged instruments and supports a sentence therefor. On the whole the information supports eleven sentences, which the trial court in its discretion may make to run concurrently or consecutively, or part one way and part the other.

Syllabus 3 of the opinion correctly states a rule of law, but I fail to see its application to this case. The record before us discloses that the recommendation made to the court by the county attorney that sentences on fifteen counts of the information should be made to run consecutively, and the sentences on the other sixteen counts be made to run concurrently with those, *was made at the suggestion and on the advice of the judge of the trial court.* It did not originate with the county attorney. In his statement before the court he specifically disclaimed any such authority as appears to be attributed to him by this syllabus.

Turning now to the questions which precipitated this appeal. Appellant contends that, under the circumstances shown by the record, the trial court erred (1) in not permitting him to withdraw his plea of guilty, and (2) in making the sentences of not less than one nor more than twenty-one years to run consecutively on each of the thirty-one counts of the information; the contention being that the sentences on fifteen counts should have been made to run consecutively, but sentences on the other sixteen counts should have been made to run concurrently with those. Normally, this is a question with which this court has nothing to do, it being wholly within the sound judicial discretion of the trial court, when there is a plea or verdict of guilty to several counts of an information, to make the sentences on the several counts run concurrently or consecutively. But this is a judicial discretion, not a discretion founded on whim or caprice, nor should it rest on violated confidence. Like all judicial discretion vested in trial courts, it is possible for it to be abused, although the instances are few in which that is done. So the real question before us is: Did the trial court abuse its discretion in respect to the two matters specifically complained about? Or, more

accurately, does the record of the case brought to this court show abuse of such discretion in these respects? This requires an examination of the record, which, so far as here pertinent, may be stated as follows: Defendant in this case was charged with the forgery of certain bonds of the city of Hutchinson and with the sale or uttering of those bonds. It was one of several similar cases pending in the state and federal courts charging defendant with the forgery and uttering of municipal bonds with a purported face value in the aggregate of several hundred thousand dollars. In the trial of this case the state was represented by the county attorney, his assistant, and an attorney who had been employed by the governor to investigate the many phases of defendant's forgeries and to assist in the prosecution of this case. He was defended by able attorneys. The information in this case was in sixty counts, but early in the trial twenty-nine of those were dismissed, leaving thirty-one. Early in the trial defendant, through his counsel, suggested to the county attorney that he would plead guilty on one or two counts if the others were dismissed. These suggestions were not favorably entertained. A little later he offered to plead guilty to ten counts, but the county attorney declined to accept the plea. In some way that offer was made known to the judge of the trial court, who, at that time, advised the county attorney he thought the offer should be accepted; but it was not. The case proceeded to trial. Approximately two weeks were consumed in empanneling the jury and in introducing the evidence for the prosecution. At the close of the state's evidence the county attorney thought possibly another offer to plead guilty to a part of the counts would be made, and the three prosecuting attorneys had a consultation and agreed that if such an offer were made they would insist that he plead guilty to the thirty-one counts then on trial. Later, and on the same day, defendant's counsel proposed to the county attorney that defendant plead guilty to fifteen counts. This proposition was rejected. Defendant's counsel then took it up with the trial court, and there appears to have been a conference in the court's chambers, attended by the judge of the trial court, the county attorney and his assistant, and defendant's counsel. At this time the judge of the trial court stated that in his opinion a minimum sentence of fifteen years was sufficient, that the maximum on that sentence would be so great that his stay in the penitentiary would depend upon the board of ad-

ministration and that he thought defendant's offer to plead guilty on fifteen counts should be accepted. The county attorney, adhering to the conclusion reached at the conference of his associates, declined to accept the plea to fewer that all the counts. Defendant's counsel objected to pleading guilty to thirty-one counts.if the minimum sentences were to be only on that provided for fifteen. The judge of the trial court asked what difference it made to him if the sentences on the other counts should run concurrrently with those on the fifteen. He stated that he did not know that it would make any difference with him if they were to run that way. At some time while this conference was going on the attorney who had been appointed to assist in the prosecution came into the room. He was advised of the subject under discussion and the trial judge asked his opinion on sentences the minimum of which would aggregate fifteen years; that is, on consecutive sentences on fifteen counts only. He replied that his familiarity with defendant's forgeries caused him not to be in a lenient mood toward him, and if any minimum term of imprisonment was to be considered less than the aggregate of one year on each count, he thought it should not be less than twenty years. The judge of the trial court then stated to the county attorney that if the plea of guilty were on the thirty-one counts he would consider a recommendation made by him that the sentences on fifteen counts should run consecutively, and the other sixteen concurrently with them; and the county attorney, in substance, stated that in view of what the court had said he would make that recommendation. Defendant's counsel then said he would consult with the defendant and see if that were agreeable. He came back to the court's chambers in a short time and stated that he had some doubt, or there might be some doubt, about the defendant's sanity, and asked the court to appoint a commission to determine his sanity before the plea should be made. The court appointed such commission. It conducted its examination and reported to the court that it found the defendant to be sane and fully competent to advise with his attorney concerning the conduct of the case. Defendant was then brought before the court and entered a plea of guilty to the thirty-one counts in the information. Defendant's counsel then asked that the imposing of sentence be delayed for a few days, and the court made an order fixing a date for it about a week later. On the date set for the sentence the court's attention was called to the case of *Beck v. Fetters*, 137 Kan. 750, 22 P. 2d 479. He .ad-

vised the county attorney and attorney for defendant that under his interpretation of that case he was not authorized under the law to make sentences on any of the counts run concurrently with the others. There was argument on the matter and colloquy between court and counsel, with the result that the pronouncement of sentence was postponed three days. At that time there was more argument and colloquy. Defendant's counsel filed an affidavit as to his recollection of the transactions leading up to the plea of guilty. The county attorney prepared and read a written statement of his recollection of those matters. In the course of the colloquy counsel for defendant, addressing the court, said:

"It was understood that the first recommendation was made at the suggestion of this court, of fifteen years.

"THE COURT: Yes, that it might be recommended."

Defendant's counsel then moved that defendant be permitted to withdraw his plea of guilty, contending that he had entered the plea relying upon the statement of the trial judge that he thought a minimum sentence of fifteen years sufficient, and that he should not object to pleading guilty to thirty-one counts if the sentences on sixteen of them should be made to run concurrently with the sentences on the other fifteen, and on the recommendation of the county attorney, made at the suggestion of the trial judge, that he plead guilty on thirty-one counts and that the sentences should be made to run consecutively upon fifteen counts and upon the other sixteen concurrently therewith; and further that he relied upon the assurance that the court would follow the recommendation of the county attorney which the judge had suggested and advised, and contended that if the court was not going to carry out this recommendation, in fairness the motion should be sustained. The county attorney and his assistant consented that the motion be sustained if the recommendation was not to be carried out.

In the statement made by the court just prior to pronouncing sentence, among other things it is said that the day the case ended counsel for the state, at least the county attorney and his assistant and counsel for the defense, were in the court's office, and they called the court in and asked what he thought about pleading, and the court stated that since the case had gone to trial he felt state's counsel should not accept a plea to less than the number of counts charged.

"Then a discussion came up, if he would plead guilty, what the sentence

would be, and the court did tell (the county attorney) that if he would recommend a fifteen-year minimum, the court would consider it. Mr. Wedell (counsel employed to assist in the prosecution) was called in the room, and he said he would not consider anything under twenty years. So far as an agreement being made on the part of the court, as far as the court has ever gone in this case was to say that he would consider the recommendation of the county attorney. . . . The court has at no time entered into any agreement with anybody to sentence this defendant to any particular term. The court was perfectly willing to consider the recommendation of the county attorney in this matter, but the court is still of the opinion that under this 137 Kansas (*Beck v. Fetters,* supra), of which I think all counsel should have been advised, although we disagree on what it means, he cannot consider the recommendations of counsel for the state at this time as to the sentence. The motion to withdraw the plea of guilty will be overruled."

The court then imposed thirty-one sentences, of from one to twenty-one years each, and made all of them run consecutively. Reverting to the questions specifically relied upon by appellant. Was it error for the trial court to deny defendant's motion to be permitted to withdraw his plea of guilty? This must be answered in the negative. The motion was not predicated on the contention that defendant was not guilty; there had been a lengthy and expensive partial trial of the case which had terminated and the jury had been discharged because of the plea of guilty. To have sustained a motion placing the parties in the position they were in when the trial started, and necessitating a repetition of all that had been done, would have been inexcusable. This is especially true since the only controversy then pertained to the extent of the sentence to be imposed—a matter which, if any error exists therein, can be corrected readily. Perhaps it was the plan of defendant's counsel, if his motion had been sustained, to have defendant plead guilty to fifteen counts, and perhaps it was the plan of the county attorney in that event to dismiss sixteen counts of the information—but the record does not show any intimation to the court of such a plan. A motion to permit defendant to withdraw his plea of guilty to sixteen counts of the information would have been more appropriate, but that motion was not made, and we do not pass upon it. The motion made contained the bald request that defendant be permitted to withdraw his plea of guilty. It was not error for the court to deny this motion.

Passing to the next question specifically urged by defendant: Did the court abuse its discretion—really go back on its word, violate its confidence—by imposing consecutive sentences on each

of the thirty-one counts of the information? This question is not so easily answered. I am of the opinion that, so far as appellant is concerned, the answer to the question is of no consequence, for consecutive sentences on fifteen counts, carrying in the aggregate imprisonment of a minimum of fifteen years and a maximum of 315 years, will keep him in prison just as long as consecutive sentences on thirty-one counts, carrying in the aggregate a minimum of thirty-one years and a maximum of 651 years. In either event he will never be released from prison unless executive clemency of some character is exercised in his behalf. If and when such clemency is exercised no doubt the entire history of this case, as well as charges in other cases, will be taken into account. But other reasons justify the court in considering the question.

It is important, of course, that the integrity of our judiciary be maintained on a high plane and that the conduct of court officials be such as to merit confidence in judicial integrity by litigants and citizens generally. We see no occasion from this record to attribute intentional bad faith to the judge of the trial court or to counsel either for the prosecution or for the defense. They are all individuals of ability and of recognized high standing. The unexpected turn in the tide of affairs appears to have created some feeling, particularly on the part of counsel for defendant, but to some extent on the part of counsel for the prosecution. This should not weigh heavily here. In the conduct of criminal business in our district courts perhaps nothing is more common than pleas of guilty and sentences imposed thereon. Reports compiled by the Judicial Council from data furnished by the clerks of the district courts throughout the state covering a period of six years show that during that time in the various district courts in our state sentences were imposed in criminal actions upon pleas of guilty in 10,849 cases and upon verdicts of guilty in 2,260 cases, showing that more than eighty per cent of the sentences are imposed upon pleas of guilty. It is well known to everyone familiar with the practice that these pleas of guilty are preceded by conferences between the county attorney and the attorney for the defendant, or with the defendant himself, if he has no attorney. When, as a result of such conference, defendant indicates a willingness to enter a plea of guilty, and the attorney for the state thinks the plea proposed would authorize punishment commensurate with the offense, the matter is presented to the judge of the trial court, perhaps in open court, frequently in

his chambers. He is informed of the nature of the crime, the circumstances of the case, and the proposed plea, and frequently a recommendation is made with respect to the penalty to be imposed. Everyone connected with the matter knows that no one can impose the sentence but the court, that the attorney for the prosecution has no authority to fix the punishment or to bind the court by any agreement, recommendation or suggestion he might make, and it is rare that he attempts to make any such agreement, although it is not infrequent that he makes recommendations with respect to the punishment. Many trial judges discuss those matters frankly with the parties and make a definite statement as to what punishment will be imposed if the plea is entered. Sometimes the judge of the trial court, deeming it not to be in harmony with his judicial position, is careful to make no definite agreement as to what punishment will be imposed, but by a statement of his views concerning the matter naturally leads counsel for defendant to believe confidently that the sentence will be imposed in accordance with the statements made. That appears to have been the situation here. We have no reason to doubt that had sentence been imposed directly after this conference and at the time the plea was entered it would have been in accordance with what the judge of the trial court had stated in the conference to be his judgment as to what the sentence should be; namely, that the sentences should run consecutively on fifteen counts and on the other sixteen counts that the sentences should run concurrently with those upon the fifteen. But sentence was not imposed that day. At defendant's request it was postponed a few days. In the meantime the judge of the trial court had discovered what seemed to him to be a legal barrier in the way of imposing sentences to run concurrently. Naturally, if such barrier actually existed, it would have been improper to impose such sentences, irrespective of what took place in the conference. He did the proper thing by calling the attention of counsel both for the defense and the prosecution to this matter and to the decision of this court which, as he interpreted it, required the imposing of consecutive sentences on all counts. There is no reason from this record to charge the judge of the trial court with bad faith in that regard, even though we now hold that the court had an erroneous conception of the decision which had been called to his attention. It is not unusual for one to be honestly mistaken.

A review of this case was deemed necessary mainly for two

reasons: *First,* to settle such uncertainty as exists concerning the power of the trial court, when there is a plea or verdict of guilty to several counts of an information, to make the sentences imposed thereon run concurrently. This question is determined, and it is held such power exists. *Second,* since the sentences in this case appear to have been imposed upon an erroneous view of the law in respect to such power, and in part because of such erroneous view, in fairness to the trial judge as well as to the appellant, the cause should be remanded for resentence, and that is done.